Our final case of the morning is Poe v. Daniels. Ms. Reber. May it please the Court. My name is Emily Reber and I am a third year law student at the University of Notre Dame Law School. I'm here today under the supervision of Mr. Robert Palmer, whom the Court appointed to represent petitioner appellant Mr. Jimmy Poe. In the Certificate of Appealability, the Court asked that we address whether Poe's claims may be properly raised under 2241. Because Poe's claims are properly brought under 2241, we respectfully request that this Court reverse the dismissal of Mr. Poe's claim. Counsel, could you explain to me what is the defect in 2255? We had the previous appeal back a decade ago now said that there was no problem with 2255. The problem was with Poe filing the wrong motion in the wrong place. Right, Your Honor. So Poe did mislabel his original motion as a 2241 rather than a 2255, but the District Court then waited 14 months. Right. So in what sense can it make to say that 2255 is ineffective just because the litigant fouls up? And that was the whole thing of our first decision, that the litigant had fouled up. Correct, Your Honor. So since then Alain, the Supreme Court has decided Alain... Alain counts for nothing because we've held that it's not retroactive on collateral review. No, but Mr. Poe does not solely rely on Alain. He also relies on Richardson. The only new thing that has happened since our decision in 2006 is Alain which is irrelevant because it's not retroactive on collateral review. So we've got the identical state of the world that we had in 2006 when Poe lost in a holding saying roughly he erred. He fouled up and so he didn't meet the deadline. Your argument has to be that 2255 is ineffective whenever a litigant makes a mistake. That would be a pretty extraordinary extension. It would be, Your Honor, and that is not what we contend here. So we are contending that there are very unique circumstances for Mr. Poe's claim. So in his initial petition, this court in its 2006 decision noted that the error may have been harmless anyway because Mr. Poe's Richardson claim was not likely to succeed since he had five other counts of distribution that the jury found him guilty of. However, Alain does clarify with respect to these claims that each and every fact that increases the mandatory minimum sentence that the prisoner is convicted of must be found by the jury beyond a reasonable doubt. And this court has recently in its decision in Webster as well as its decision in Creighton has stressed the importance of 2241 as protecting the constitutional right to habeas corpus. And so the relevant inquiry under Webster as well as under Davenport, which contains this court's most extensive analysis of 2241 claims, is whether the inquiry is, I'm sorry, whether the petitioner has been given a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence. And here, Mr. Poe has never had that opportunity, not only because of the district court's unreasonable... No, I think you're just misreading or misstating what we decided in 2006. Poe had the opportunity to make an argument under Richardson. He just didn't use it. Poe had the opportunity to make an argument. This court noted in that decision that the district courts neglect in failing to promptly rule on Poe's petition in conformance with Rule 4 of the rules governing 2254 and all 2255 cases deprived Poe of the opportunity to correct his mistake. So for a 2241 petition, that is substantial enough to constitute inadequacy or ineffectiveness of the court has said in Brown v. Carraway, this court said that the purpose of the adequacy escape hatch in 2255 was and is to preserve whatever constitutional right there may be to habeas corpus. And in Davenport, the court clarified that the court need not only allow constitutional cases because the escape hatch is not worded so narrowly. So in this case, Your Honors, Poe, as we know, filed a mistakenly labeled 2241 petition less than two months after Richardson was decided. However, even if that petition could have gone through, he could not have availed himself of the holding of Alain. So when Poe filed his... I don't understand how this is an Alain claim at all. It's a Richardson claim being bootstrapped into Alain to bring it even more belatedly than it was brought before. Your Honor, under my understanding, Alain is very important to this claim because it negates the harmless error argument that the government raised in its brief and that the court noted in 2006. Alain is a case about mandatory minimums. That's not what the argument is here. The argument is Richardson error. Right, Your Honor. But the court in Alain held that each fact that increases the mandatory minimum, so each and every fact. Right. We don't have a mandatory minimum claim in this case. We have a claim about Richardson that he shouldn't have been convicted of the CCE offense because the jury instruction was bad. Yes, Your Honor. So our contention is that the reasoning in Alain applies to Mr. Poe's claim. So in his... in order to satisfy the elements of a continuing criminal enterprise, the jury had to find, with respect to at least two of the underlying violations, that he undertook the violation in series with five or more other persons, that the offender occupied a position of organizer, supervisor, or manager, and that he derived substantial income from it. So the reasoning of Alain, that each and every fact must be found by... Actually, the Richardson error has to do with the and we said in the earlier iteration of this case that because he was convicted beyond a reasonable doubt of multiple predicate offenses, Richardson just wasn't violated here. The rule of Richardson even, you know, if we were to get to the merits. Yes, Your Honor. And that is how Alain clarifies this. Because Richardson you're correct that in the earlier Poe 1 holding the court said that Mr. Poe's Richardson claim may not have had merit because the jury found that he committed these violations anyway. But the jury did not find with respect to those violations, not only that they did not unanimously agree on which two constituted a series, but they also... Well, they necessarily had to, we said, in the first Poe case, because they convicted him beyond a reasonable doubt of multiple pre-standing predicate offenses. Correct, Your Honor, but the distribution statute 21 U.S.C. 841, I believe does not require the same requirements of being in concert with five or more other people. So the jury could have... Well, right. If it did, there would be double jeopardy issues. The CCE statute is a different statute, and we're talking the Richardson error is an attack on the jury instruction having to do with the predicates, not the supervisor or manager or any of that kind of stuff. Right, Your Honor. So we know the jury unanimously agreed on that. Right. So any claim about Alain here that's focused on that is not a good claim. Your Honor, the Alain claim is that one jury member may have thought that violations one and two were committed in concert with five or more other persons, etc. And jury number two may have thought that violations number three and four were committed. And Alain clarifies that the jury must have found beyond a reasonable doubt that the two unanimously agreed on the two violations which were committed in concert with five or more other persons and the other requirements. Unless the panel has any other questions at this time, I will save my time for rebuttal. Certainly, Counsel. Thank you. Mr. Wood. Your Honor, may it please the Court, Bob Wood on behalf of the government. Your Honor is right. The thing that I regretted when I went back to prepare was that I didn't mention structural problem over and over. This case does not have the sort of structural problem that this Court's precedents require. And I'd like to address really quickly Your Honor's point about Richardson harmless error and how it translates into Alain. I think maybe as I thought about this, what's going on is in Webster there was this constitutionalization of a statutory rule and that was seen by the Richardson majority as an intervening event. And we have Alain, even though it doesn't match up perfectly, we have this constitutional rule. But really what was harmless error under Richardson means no error under Alain. At least as this Court put it in Poe 1, because the factual findings were made by the jury. Right. And to the extent that Alain is the hook here, it's not retroactive. It's not retroactive, exactly. And as this Court said recently, when it said that it was not retroactive, it made clear that there's no way for a Supreme Court case, at least conceivably the way that retroactivity works right now, for it to be retroactive to some subset, even if that subset has a logical connection. And I'm not sure the logical connection is even present here, even if we were to entertain that idea. And I would also say that there is some discussion between the briefs as to whether and to what extent Webster extended Davenport's statutory claim lacuna idea to constitutional claims more broadly than the way the Webster Court stated it. And I think the Webster majority took great pains, and I know I'm preaching to the choir a little bit here, but took great pains to say that the constitutional rule that they were to do has to be a constitutional ineligibility for the death penalty. And the Court took its own limitations very, very seriously, and I think that this case just doesn't come anywhere near those limitations for various reasons. I sense that the Court is satisfied with most aspects of its inquiry today. If there are no further questions, I'll just rest on my brief. Thank you, Your Honor. Thank you, Counsel. Ms. Reber, you've got about 30 seconds left. Anything further? Just briefly, Your Honor. That's guaranteed. Your Honor, just to note, yes, Elaine has not been held retroactively by the Supreme Court. However, Richardson was made retroactive in Dodd, and I would call your attention to Judge Williams' concurrence in Creighton, where she noted that there are two types of decision that apply retroactively, and the second type, which is relevant here, are those identifying rights so fundamental that any system of liberty, of ordered liberty, is obliged to include them. And she suggested that perhaps the Elaine rights are included in that category. Thank you. Thank you very much. And again, Mr. Palmer, we thank you and Notre Dame for taking on this task for the cases taken under advisement. And the Court will be in recess. Thank you.